# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

Larry James Tyler,        )    Civil Action No.  9:16-1275-MGL-BM
                         )
        Plaintiff,      )
                         )
v.                      )     **REPORT AND**
                       )     **RECOMMENDATION**
Sheriff Wayne Byrd, Captain Coe  )
and Diann Wilkes,        )
                         )
        Defendants.   )
                         )

       This is a civil action filed by the Plaintiff, Larry James Tyler, pro se.  Plaintiff, who

is detained at the Darlington County Detention Center while awaiting civil commitment proceedings

pursuant to the South Carolina Sexually Violent Predator (SVP) Act, S.C. Code Ann. §§ 44-48-10

through 44-48-170, seeks relief under 42 U.S.C. § 1983.[1]  Plaintiff is a frequent filer of litigation in

this Court, having filed at least nineteen (19) cases in which he has asserted a variety of claims.  Aloe

Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may

take judicial notice of the contents of its own records].

       The Defendants Byrd and Coe filed a motion for summary judgment pursuant to Rule

---

    [1]42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method
for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994)
(quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  A civil action under § 1983 allows "a
party who has been deprived of a federal right under the color of state law to seek relief."  City of
Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).  To state a claim under
§ 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or
laws of the United States was violated, and (2) that the alleged violation was committed by a person
acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

- 1 -



56, Fed.R.Civ.P. on March 20, 2017.[2] As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 21, 2017, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion on April 24, 2017, following which the Defendants filed a reply memorandum on May 1, 2017. Plaintiff then filed a sur reply on May 11, 2017.

The Defendants' motion is now before the Court for disposition.[3]

## Background and Evidence

Plaintiff alleges in his verified Complaint[4] that on October 30, 2015, at around 3:00

---

[2]There is an additional Defendant named in this case - Diann Wilkes. However, it is unclear whether this Defendant has ever been served. Initially, counsel for Byrd and Coe also filed an answer for the Defendant Wilkes. See Court Docket No. 20. See also Court Docket No. 25. However, counsel subsequently filed a motion to be relieved as counsel for Wilkes, stating that they had originally filed a responsive pleading on behalf of this Defendant under the mistaken belief that she was an employee of the Darlington County Sheriff's Office, when in fact she is the owner of Hartsville Medical Enrichment Services, LLC (HMES). That motion was granted, and the Clerk was directed to complete a new summons and Form USM-285 for the Defendant Wilkes for the address shown in Paragraph 9 of counsel's motion, and to forward same to the United States Marshal for service of process. See Court Docket Nos. 33, 36. That summons was subsequently returned showing that service had been accepted (by mail) by someone identified as "E. Perkins, Captain". It is not clear who this individual is, and no responsive pleading has ever been filed by Wilkes, nor has any legal counsel ever made an appearance in this case on her behalf.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants Byrd and Coe have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein
(continued...)



p.m., he was booked into the Darlington County Detention Center.[5] Plaintiff alleges that when he was booked into the Detention Center, he had some migraine medication with him (Imitrex)which was taken from him by the booking officers even though it had been "ordered by my Dr. to remain with me at all times". Plaintiff alleges that subsequently, at around 2:00 a.m. the next day, he began to experience symptoms indicating the "coming attack of a migraine", but that even though he asked the Sergeant on duty to get him his Imitrex, "she said that no one is in the medical dept. at this time", and that he had to wait until 8:00 a.m. Plaintiff alleges that he then asked the Sergeant to get her supervisor, but that "she would not". Plaintiff alleges that at 8:00 a.m. that morning he was seen by the Lance Corporal and that the medical department was called, but that "no one came with the pill until 11:00 a.m. that morning". Plaintiff alleges that he got a migraine, and "was throwing up all morning, could not sleep, eat for 3 days after that".

Plaintiff alleges that he took his last Imitrex pill on November 5, at which time Nurse Ashley (who worked for "HMES", which provides medical services for the jail) told him they were not going to order any more Imitrex for him because it was too expensive. Plaintiff alleges that thereafter, from November 5 to around November 19 or 20th, he was instead given Tylenol, which Plaintiff alleges "did nothing for my pain". Plaintiff alleges that he was told that "by orders from Captain Coe" they were waiting for the doctor to come and find a less expensive medication.

---

[4](...continued)
are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[5]Plaintiff had been transferred to the Detention Center from the South Carolina Department of Corrections (SCDC) to begin SVP proceedings.

Plaintiff alleges that he sent a number of kiosk messages to Diann Wilkes, but "no urgency took place", and that during this period of time he had migraine attacks on November 10 and November 13.

Plaintiff alleges that the pill they finally gave him to replace the Imitrex was Topamax. Plaintiff alleges that he later got food poisoning which caused an intestinal contamination, and that the doctor gave him some antibacterial pills to take. Plaintiff alleges, however, that even after this condition cleared, he still had no appetite, and that Plaintiff learned from a "data sheet" that Topamax can cause weight loss. Plaintiff alleges he lost nine pounds in a month, and requested to get off of Topamax. Plaintiff alleges that medical then took him of Topamax, but "did not give me another migraine medication until two weeks later". Instead, during that time he was given Tylenol again, which Plaintiff alleges did not prevent him from getting migraines.

Plaintiff also alleges that in November 2015 he put in for a tooth extraction. However, even though he had "two bleeding decayed teeth that needs immediate extraction . . . Captain Coe refused to do it". Rather, Plaintiff alleges that Coe told him they would not schedule him for an extraction until he had some money in his account (amount illegible). Plaintiff further alleges that Wilkes knew of his chronic migraine condition because he sent her a letter (attached to the Complaint), following which she notified Coe of his condition. The letter Plaintiff has attached to his Complaint, addressed to the "Medical Dept. Director", is dated November 6, 2015. As for Byrd, Plaintiff states that "I am only including Sheriff Wayne Byrd [as a Defendant] because he represents the entity Darlington Detention Center". Plaintiff seeks certain injunctive relief, as well as monetary damages.



- 4 -

In an amendment to his Complaint filed September 26, 2016, Plaintiff alleges that from July 11, 2016 to around July 17, 2016, he was given Advil instead of "migraine medication", which "did nothing to relieve my pain". Plaintiff further complains that he was provided with "generic pills" in August 2016, but that he was only provided with twenty pills to last him for seven days, when he needed four to six pills a day due to the short relief time these generic pills provided. Plaintiff also alleges that the doctor told him that she was going to put him on Excedrin Migraine, but that the generic pill he received was "not anything like Excedrin migraine pill". Plaintiff further alleges that he is supposed to stop using these pills if he gets ringing in his ears, although he did not know that this was a "stop use" symptom until he saw a data sheet on pills he was taking. Plaintiff also alleges that on August 4, 2016 Wilkes intentionally did not give him his pills, and that he had to go two days, until August 6, before getting relief.

Plaintiff has also attached two "Declarations" from other inmates to his amendment. Inmate William Brunson attests in his declaration that he has been housed at the Darlington County Detention Center since January 15, 2016, and that on July 13, 2016 Plaintiff did not come out of his cell for recreation or to get his food, but stayed in his cell and slept all day long. Brunson attests that when he subsequently asked Plaintiff what had happened, Plaintiff told him that medical had not given him his migraine medication in almost a week. See generally, Brunson Declaration. Another inmate, Brian Brumett, attests that he has been incarcerated at the Darlington County Detention Center since June 10, 2016, and that he saw "Nurse Ashley" give Plaintiff two pills around 8:00 a.m. on July 13, 2016. Brumett attests that Plaintiff told him that these pills were Tylenol, and that he had not received his migraine medication from medical "since last Sunday". Brumett attests that Plaintiff "looked awful" and did not come out of his cell or eat anything for three days. Brumett attests that



he also saw Plaintiff throwing up in the toilet on July 14. Although Brumett also attests that he did see the Nurse give Plaintiff some more pills later that Wednesday evening, Plaintiff told him that they were Advil, not his migraine medication. See generally, Brumett Affidavit.

In support of the Defendants' motion for summary judgment the Defendant Waddell Coe has submitted an affidavit wherein he attests that he is employed by the Darlington County Sheriff's Office and is assigned to the Darlington County Detention Center. Coe attests that the medical treatment and services at the Detention Center are provided by Hartsville Medical Enrichment Services, LLC (HMES), an independent contractor, and that although he is often made aware of an inmate's medical complaints and/or treatment by HMES, he never undertakes the duty to treat inmates himself since he is not a medical professional. Even so, Coe attests that he is aware that Plaintiff was never denied any medical attention he required by anyone, including himself,and that in fact Plaintiff has been provided medical care by HMES on multiple occasions upon his request. See generally Coe Affidavit.

The Defendants have also attached copies of numerous HMES provider notes and nurses notes/on call requests showing where Plaintiff was provided care for his complaints of migraines. These medical records reflect that after Plaintiff complained of having a migraine on November 2, 2015, the attending medical professional (apparently an MD) stated that they would try "Metria"[6] before ordering Imitrex, two tablets every two hours. The nurse was also to try and obtain Plaintiff's records from the South Carolina Department of Corrections (SCDC) [where he had been transferred from] to see what medications he had been on.

---

[6]As best as can be determined - writing of drug name is largely illegible.

On November 7, 2015 medical was called by "Ofc. Freeman" at 8:30 a.m., who advised that Plaintiff was complaining he had a migraine and needed medication. Plaintiff was observed in his cell sitting on his bunk, and was advised that he would be provided with some Tylenol "until Imitrex or formulary med is in". Plaintiff was further advised that he was to let medical know when he was having a migraine or headaches so that he could be provided some Tylenol. This medical note reflects that later that day, at 2:35 p.m., Plaintiff refused receipt of any medications and would not come out of his room.

Records from November 9, 2015, at 9:52 a.m., show that Plaintiff inquired about getting some Imitrex, but was advised that until Imitrex or an alternative medication was provided, he would be provided with 500 mg of Tylenol. This medical record further notes that although Plaintiff was taking his Tylenol without difficulty, he had been refusing to take his Depakote prescription when offered.

Medical records from November 16, 2015, at 11:20 a.m., show that medical staff had spoken with the Plaintiff regarding his request for a tooth extraction. Plaintiff was observed to have a tooth that was broken off, but there was no abscess noted. The medical record indicates that, per Captain Coe, Plaintiff was advised that since he was a pre-sentenced inmate/patient, he had to have the $125 cost for an extraction in his account before an appointment could be scheduled. This patient report indicates that Plaintiff "voiced understanding and states he will just fight it in court".

Nurses notes from November 25, 2015, at 2:40 p.m., show that during "med pass" Plaintiff advised that he had a headache and that although the Topamax he was taking was helping, it did not fully get rid of his headaches. Plaintiff was advised that his comment would be referred to a provider for review. A subsequent entry for that day, at 3:35 p.m. states that upon return to



medical it was noted that the Plaintiff had put in for sick call for complaints of chest pain from when he had woken up that morning. Plaintiff was scheduled for sick call, although it was noted that during the earlier conversation the nurse had had with Plaintiff during med pass, he had not voiced any complaints other than about his headache.

Provider notes from December 18, 2015 reflect that Plaintiff reported moderate improvement in the frequency of his headaches, although he was still having them. It was noted that Plaintiff was on Topamax at that time, and that his dosage was being increased to better control his headaches. Plaintiff's prescription for Depakote was discontinued since Plaintiff reported he had no improvement on this medication.

A provider note from January 18, 2016 notes that Plaintiff was reporting partial improvement in his headaches on Topamax, while a review of Plaintiff's outside medical records suggested that what he was having were more likely tension headaches, rather than migraines. Plaintiff was not reported to be in any other distress. This provider note also reflects that medical staff was going to add "Mobic" to Plaintiff's medications for tension headache control and "see how he responds". It was also noted that Plaintiff had previously refused to take either Ibruprofin or Tylenol when offered.

A nurse's note from July 13, 2016 at 11:00 a.m. reflects that Plaintiff had contacted medical complaining of a headache, and that Plaintiff was spoken to while in the pod and advised that his "Excedrin Migraine tabs will be refilled later today". In the interim, Plaintiff was provided with two tablets of 500 mg of Tylenol while the nurse was awaiting refill from the pharmacy, and he was advised that he would be provided with his other medication when it came in later that day. Plaintiff voiced his understanding, and it was noted that even though Plaintiff was complaining of



- 8 -

a severe headache, he was up walking around the room and interacting with other inmates. <u>See</u> <u>generally</u>, <u>Plaintiff's medical records</u> (Defendants' Exhibits).

As an attachment to his memorandum in opposition to the Defendants' motion for summary judgment, Plaintiff has provided a Declaration in which he reiterates the allegations of his Complaint. Plaintiff also complains about the Defendant Wilkes not being served with process, and about having a lack of postage money necessary to send copies of forty or so kiosk appeals he wrote about his lack of medication. Plaintiff also reiterates that on November 5, 2015 he was told by the medical nurse that the Warden (apparently Coe) was not going to buy him Imitrex because of the cost, and also complains about how the medical log sheets are maintained.

Along with this Declaration, Plaintiff has also attached eighty-two pages of supporting documents. These documents include a transfer sheet from the SCDC dated October 9, 2015 showing that when Plaintiff was transferred out of the SCDC he had some Imitrex medication with him, and that he had been prescribed Depakote. These documents also include numerous grievance filings as well as additional medical records, some of which are the same records already submitted by the Defendants.

In an inmate grievance record sheet dated November 6, 2015, Plaintiff states that he needs "to see Dr. immediately for migraine medication and cold". The response reflects that Plaintiff had already been referred to the provider for this complaint. Plaintiff has also provided copies of inmate grievance records complaints from November 8, wherein he complains about suffering migraines and wanting some Imitrex, along with additional inmate grievance complaints for either not receiving medication or not receiving medication fast enough on November 9, 2015, and November 13, 2015. Plaintiff has included a handwritten noted dated March 27, 2016 addressed to



Wilkes, and a handwritten note dated July 16, 2016 addressed to Coe, complaining about headache pain and that "Tylenol does nothing".[7] Plaintiff also has included an original note to Wilkes dated August 29, 2016 in which he complains that she "intentionally shorted me 8 pills last week".

Another exhibit Plaintiff has provided is from March 26, 2016, where Plaintiff signed an acknowledgment that he was receiving a Keep on Person (KOP) packet for his medication, and that he would be subject to disciplinary action if he was caught misusing, abusing, or giving out this medication to other persons. Other exhibits show that Plaintiff was provided with Depakote as well Sumatriptan for headaches on October 30, 2015, that he was provided with numerous medications for various medical complaints (including his headaches) on November 1 through November 30, 2015, that he was provided with medications for various complaints including Topamax for headaches from February 1 through February 29, 2016, that he was provided with medications for various complaints including Excedrine Migraine for complaints of headaches from March 26, 2016 through May 18, 2016, and that he was again provided with medications for various complaints including Excedrine Migraine for complaints of headaches from May 22, 2016 through July 13, 2016, and again from July 17, 2016 through September 7, 2016.

Plaintiff has also provided some inmate grievance records from November 2015 where he complains that he needs a tooth extracted immediately and had a rash on his hand that needed curing. Plaintiff received a response indicating that he had been scheduled for sick call and that the cost for an extraction was $125. Plaintiff repeated his request to have his tooth extracted on November 11, 2015, November 16, 2015 and November 15, 2015, with Plaintiff being advised on

---

[7]It is unclear whether either of these Defendants received these notes, as they appear to be the originals.



each occasion that the cost for an extraction was $125. In an inmate grievance filed December 22, 2015, Plaintiff again requested removal of his "bleeding painful teeth", and was advised that "per Major Coe, [Plaintiff] is responsible for costs like all County inmates/patients". Plaintiff was again advised that he needed the payment amount before an outside dental appointment could be made on May 11, 2016. A nurse provider note from May 13, 2016 shows that Plaintiff had been complaining of a toothache "on and off" for three months, and that on examination he was missing his part of a tooth on the upper left side, and was provided with 500 mg of oral medication (writing unintelligible) with instructions to rinse out his mouth after every meal and at bedtime.

In an inmate grievance submitted November 6, 2015, Plaintiff complained about not getting Imitrex for four days, and about also receiving his medications at the wrong time - that he wanted it sooner. Plaintiff has also provided a copy of the nurse on call note from the following day November 7, 2015, which is the same exhibit provided by the Defendants, as well as copies of other nurse on call notes and provider notes that the Defendants have provided as exhibits.

In an inmate grievance request dated November 17, 2015, Plaintiff complains that Tylenol was not doing away with this pain and that he wanted his Imitrex migraine medication. The response indicates that, per "Dr. Hartler", Plaintiff was started on 50 mg of Topiramate, 1 pill to be provided at 4:00 p.m. daily. In a subsequent inmate grievance dated November 2015, Plaintiff wanted "some info on this Topamax", including why it had been prescribed to him and what the side effects were.

In a nurses on call note dated December 16, 2015, Plaintiff indicated that his Topamax was helping "more than any previous" time, but that he still had migraines "sometimes" and wanted his dosage increased if possible. Thereafter, in an inmate grievance filed December 22,



2015, Plaintiff complained that he was still having headaches even with "this new increase in the Topamax", and that he wanted "total relief. Not partial." Plaintiff was scheduled for sick call, where Dr. Hartler noted that Plaintiff had just started his increase on his Topamax prescription and stated that they would wait to see if this would work. The indication is that Plaintiff accepted this advice.

In a grievance request filed March 18, 2016, Plaintiff asked to be taken off of Topamax because (Plaintiff believed) it was making him lose weight. Plaintiff repeated this request on March 21, 2016, and stated that if he was not prescribed Imitrex by Friday, he would file a lawsuit. In another inmate grievance filed March 16, 2016, Plaintiff asked for something for a migraine he had had since the previous day, and complained that the pills he had been receiving "have not been working for some reason. Seems to be getting worse every hours". In the response to his request that he be taken off Topamax, it was noted that his Topamax had been discontinued per his request, and that he was instead being provided with Tylenol "per D. Wilkes". However, on March 27, 2016, Plaintiff complained that he needed something more than Tylenol. Plaintiff was scheduled to see the provider.

In an inmate grievance filed July 11, 2016, Plaintiff complained that "I will be out of my migraine pills today. Please get some for tomorrow". The response on the grievance was that "packs are refilled on Sundays and Wednesdays". The following day, Plaintiff submitted a grievance in which he stated that if he was not going to be given his migraine pills that day, could he at least be provided with "those 500 mg Tylenol". His request was "acknowledged". In a grievance request filed July 14, 2016, Plaintiff complained to Wilkes that the Advil he was being provided was not working, and that he instead wanted Excedrine "immediately". In a grievance complaint filed August 24, 2016, Plaintiff complained to Wilkes that he had received only 20 migraine pills the

- 12 -



previous day to last him from August 21 through August 28, but that he needed more pills because he took four to five pills daily. The response to Plaintiff's grievance was that the amount he had been given was "to last from 8-23-16 to 8-28-16 [five days]".

In a grievance filed August 28, 2016, Plaintiff complained that he had been "shorted" eight migraine pills, which had resulted him going three days without migraine pills. Plaintiff states that he would "include this in my suit against" Wilkes. In a grievance filed August 31, 2016, Plaintiff complained that it was not Excedrine Migraine that he was being given, and that he was instead being given a "generic". In a grievance filed September 10, 2016, Plaintiff complained that he was waking up at night with migraines "sometimes", and that even though he had been told to take four pills a day, the "generic pain pill" he was on said he could take up to eight pills a day. The response to this grievance indicates that Plaintiff had been advised not to take more than four pills in a twelve hour period, which would be eight pills over twenty four hours. See generally, Plaintiff's Exhibits.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing

- 13 -



a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that Defendants Byrd and Coe are entitled to summary judgment in this case.

## I.

Plaintiff's status as a civilly committed inmate (as opposed to a convicted prisoner) most closely resembles that of a pretrial detainee. Lingle v. Kibby, 526 Fed.Appx. 665, 667 (7th Cir. Apr. 15, 2013) [Civilly committed persons are treated as pretrial detainees]; Valbert v. South Carolina Dep't. of Mental Health, No. 12-1973, 2013 WL 4500455 at * 9 (D.S.C. Aug. 20, 2013) [same]; Treece v. McGill, No. 08-3909, 2010 WL 3781695 at * 4 (D.S.C. Sept. 21, 2010)["A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee."] (quoting LaSure v. Doby, No. 06-1527, 2007 WL 1377694 at * 5 (D.S.C. May 8, 2007)); Tillman v. Dixon, No. 10-5032, 2011 WL 5119187 at * 9 (W.D.Wash. Aug. 12, 2011)[The rights of those civilly committed are analyzed using same standards that apply to pretrial detainees], adopted by, 2011 WL 5118750 (W.D.Wash. Oct. 27, 2011); Youngberg v. Romeo, 457 U.S. 307, 324 (1982).

Therefore, Plaintiff's medical claims are evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979); see also Seling v.



_Young_, 531 U.S. 250, 265 (2001) ["[D]ue process requires that the conditions and duration of confinement under the [Sexually Violent Predator] Act bear some reasonable relation to the purpose for which persons are committed"]; but see also _Martin v. Gentile_, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections]. _Cf._ _Larch v. Gintoli_, 04-1962, 2006 WL 895019, at ** 3-4 (D.S.C. Mar. 31, 2006).

## II.

As public officials, both Byrd and Coe are subject to monetary damages under § 1983 in their individual capacities. However, in order for either of them to be liable in this case, Plaintiff must have evidence to show that either or both of them actually engaged in conduct which denied Plaintiff his constitutional rights. _See Barren v. Harrington_, 152 F.3d 1193, 1194 (9th Cir. 1999) ["Liability . . . must be based on the personal involvement of the Defendant"], _cert denied_, 522 U.S. 1154 (1999); _Wilson v. Cooper_, 922 F.Supp. 1286, 1293 (N.D.Ill. 1996); see also _Horton v. Marovich_, 925 F.Supp. 540 (N.D.Ill. 1996) ["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"]. Plaintiff has failed to present any such evidence.

With respect to Defendant Byrd, it is readily apparent that Byrd has been included as a Defendant in this action solely by virtue of his status (at the time) as Sheriff of Darlington County. Plaintiff even admits as much in his Complaint. _See_ Complaint, p. 10. There are no factual allegations or evidence to show that Byrd had anything to do with, or played any role in, the medical care and decisions involving the Plaintiff. As for the Defendant Coe, other than Plaintiff's specific allegations that Coe would not schedule him for a tooth extraction without a payment of $125 and



- 15 -

that Coe did not want to purchase Imitrex because it was too expensive, there is no evidence that he played any role in Plaintiff's medical care or was involved in the decision making with respect to what kind of care Plaintiff should receive.

The doctrines of vicarious liability and respondeat superior are not applicable in § 1983 cases. See Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). Therefore, as supervisory officials, Byrd and Coe may be held liable only if there was an official policy or custom for which they are responsible which resulted in illegal action. See generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)), abrogated on other grounds, County of Riverside, 500 U.S. 44 (1991). Plaintiff has presented no evidence of any such policy or custom here. Rather, Plaintiff's complaint is that he did not receive (in his opinion) proper medical care while at the Detention Center, and that these two Defendants should be liable because they are responsible for the operation of the Detention Center. However, as noted, there is no evidence that either one of these two Defendants played any role in Plaintiff's medical care or decisions (other than with respect to the two specific allegations Plaintiff makes against Coe, discussed hereinbelow infra), and they cannot be held liable for any medical decisions made by medical personnel at the jail just because those medical



professionals are employees of the jail.[8]  Rather, they are allowed to rely on the judgment and

decisions made by the medical professionals who saw the Plaintiff with respect to Plaintiff's medical

care.  Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment

of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely

on expertise of medical personnel].

Hence, even if the Court were to otherwise find that the medical claims made against

the Defendant Wilkes are sufficient to survive summary judgment, Byrd and Coe are entitled to

dismissal as party Defendants with respect to these medical claims.  Vinnedge, 550 F.2d at 927-929

[the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 case];

Shakka, 71 F.3d at 167 [officials entitled to rely on judgment of medical personnel].

---

[8]The medical personnel who provided medical services at the jail (including the Defendant
Wilkes) are all apparently employees of HMES, a private company that provides medical services
to detainees at the Detention Center pursuant to a contract with the jail or County.  However,
although employees of a private company, individual employees of medical companies providing
contract medical care to public entities have been found to be "public officials" for purposes of §
1983 lawsuits.  West v. Atkins, 487 U.S. 42, 48 (1988)[Holding that private physicians that
contracted with the State to provide medical care to prisoners were state actors because they were
hired to fulfil an obligation - medical care - which was traditionally filled by the State]; Mavins v.
McFadden, No. 09-483, 2009 WL 4906573, at * 5 (D.S.C. Dec. 18, 2009) [Rejecting argument that
actions by employees of Correct Care were not taken under color of state law as required by § 1983);
Robinson v. Greene, No. 06-985, 2007 WL 1447871 at * 6 n. 5  (D.S.C. May 11, 2007) [Rejecting
argument that the medical defendants were not state actors because they were employed by a private
health contractor to provide services at the detention center]; see also Holly v. Scott, 434 F.3d. 287,
292, n. 3 (4th Cir. 2006)[Dismissing Bivens claim against GEO Group, which provided medical care
to federal prison inmates at a privately run facility pursuant to a contract with the Federal Bureau of
Prisons, but declining to decide whether employees of a private prison facility under contract with
a state are subject to liability under 1983].  Therefore, the fact that these medical professionals might
be employed by a private company, rather than a government entity, would not by itself necessarily
prevent them from being potentially liable in a § 1983 lawsuit as "public actors".



## III.

There are, however, two allegations against Coe (that he would not schedule Plaintiff for a tooth extraction until Plaintiff had the required $125 fee, and that he did not want to purchase Imitrex for the Plaintiff because it was too expensive), which need to be considered separately, as they involve allegations of specific actions and conduct taken by Coe involving Plaintiff's medical care.

With respect to these two claims, liability may be imposed on Coe only if Plaintiff has evidence to show that "the decision by the professional [Coe] is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment". Youngberg, 457 U.S. at 323. Further, "[i]n determining whether the State has met its obligations . . . decisions made by the appropriate professional are entitled to a presumption of correctness. Such a presumption is necessary to enable institutions of this type . . . to continue to function". Id, at 324. Therefore, in order to avoid summary judgment on these claims, Plaintiff would need to have submitted evidence sufficient to create a genuine issue of fact as to whether Coe failed to exercise the level of professional judgment required by Youngberg with respect to these two complaints. See Patten v. Nichols, 274 F.3d 829, 838 (4th Cir. 2001) [Denial of medical care claim brought by an involuntarily committed patient "must be measured against the professional judgment standard articulated by the [Supreme] Court in Youngberg"]. Plaintiff has failed to do so.

As previously noted, Coe is not a medical professional, and Plaintiff has presented no evidence whatsoever that any medical professional had instructed or opined that Plaintiff had to have only one certain type of headache medication (Imitrex), or that Plaintiff's health was or would

- 18 -



be at risk if he did not receive this particular medication. Moreover, the record is replete with medical records and documentation (including Plaintiff's own evidence) showing that Plaintiff was prescribed and received a number of medications for his headache complaints (including, at times, even his desired Imitrex), and that he was also seen and evaluated on numerous occasions both by nurses and a physician with respect to this Complaint. Hence, even assuming Plaintiff's claim that Coe preferred not to have to purchase Imitrex because it was more expensive than other medications to be true for purposes of summary judgment, there is no evidence to show that this interfered with Plaintiff's receipt of "minimally adequate" medical care while at the jail. See Savidge v. Fincannon, 836 F.2d 898, 907-908 (5th Cir. 1988) [Civilly committed patients right is to "minimally adequate . . . medical care"]; Rankins v. Bennett, No. 02-784, 2004 WL 3331898, at * 3 (E.D.N.C. Feb. 12, 2004) [No constitutional violation where there was no evidence defendant was unresponsive to plaintiff's requests for migraine medication, although it was not the medication plaintiff thought he should have]; cf. McFerrin v. Oates, No. 15-98, 2016 WL 5109183 at * 3 (E.D.Tex. Aug. 4, 2016) [No constitutional violation where inmate was given pain medicine for his migraines, although it was not the medicine he preferred.], adopted by, 2016 WL 4995289 (E.D.Tex. Sept. 19, 2016). As noted, not only did Plaintiff occasionally receive Imitrex for his complaints, but the medical evidence shows that he also received numerous other medications and was seen regularly by nurses and at least one physician. The fact (assumed to be true for purposes of summary judgment) that Plaintiff did not always receive the medication he desired or exactly at the times he demanded it does not establish a constitutional claim against Coe. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Jackson v. Fair, 846 F.2d 811, 817 (1st

Cir. 1988) [the Constitution "does not guarantee to a prisoner the treatment of his choice."].

As for Plaintiff's claim about his tooth, there is again no evidence (other than Plaintiff's own lay assertion that his tooth condition was serious) to show that Plaintiff had any emergency with his tooth. The only medical evidence provided with respect to Plaintiff's request for a tooth extraction reflects that, although Plaintiff did indeed have a broken a tooth, there was no abscess, and the medical professionals who saw the Plaintiff chose to treat Plaintiff's complaint with a medicated mouth rinse and occasional use of Tylenol when Plaintiff complained of pain. While Plaintiff's broken tooth may have caused him discomfort, that is not the criteria for a constitutional claim,[9] and Plaintiff has submitted *no medical evidence, records, or opinion from a medical professional* to show that his tooth condition was in any way so serious or urgent that it required immediate emergency care. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); cf. Formica v. Aylor, No. 14-449, 2016 WL 4524233, at * 8 (W.D.Va. Aug. 20, 2016) [Summary judgment granted where Plaintiff failed to provide documentation to support his claim of extreme pain suffered due to delay in treating tooth]. Certainly the medical records provided to the Court (by both the Defendants *and* the Plaintiff) do not reflect any such findings or opinion. Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 5 (D.S.C. September 4, 2012), aff'd. 507 Fed. Appx.

---

[9]Moreover, even with regard to Plaintiff's complaint of tooth discomfort, he does not dispute that he was given pain medication (as is also noted in the medical records) and there is no medical evidence in the record to support Plaintiff's claim that his broken tooth was a medical emergency requiring immediate action. To the contrary, the only medical notation regarding this complaint was that on examination Plaintiff's tooth was found to have "no abscess". See Court Docket No. 48-3, p. 4.



294 (4th Cir. 2013) [Finding that a self serving affidavit from the Plaintiff was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of Plaintiff's self serving claims].

Therefore, the fact (again, assumed to be true for purposes of summary judgment) that Coe required Plaintiff to pay the required $125 fee before he would schedule what would have been elective non-emergency surgery does not amount to a violation of Plaintiff's constitutional rights. Jackson, 846 F.2d at 817 [the Constitution "does not guarantee to a prisoner the treatment of his choice."]; see also Poe v Ozmint, No. 05-1568, 2006 WL 3489110, at * 7 (D.S.C. Dec. 4, 2006) [In deciding whether a constitutional violation has occurred, "it is important to remember that whether or not Plaintiff was provided with the care he desired is immaterial"]; Webb v. Hamidullah, No. 05-2546, 2006 WL 2076942, at * 11 (D.S.C. July 24, 2006) [In case where Plaintiff was requesting elective surgical care, finding no constitutional violation where Plaintiff offered only his own lay opinion while providing no medical evidence to support his claim that surgery for his complaint was medically required at that time]. Rather, Plaintiff must have evidence to show that Coe's decision not to schedule him for surgery (absent payment of the required fee) was arbitrary and unprofessional. Youngberg, 457 U.S. at 323 [to present a viable claim, there must be *evidence* that the medical treatment or advice provided to the Plaintiff represented "a substantial departure from accepted professional judgment, practice or standard"]; cf. Missouri v. Spivey, No. 13-1326, 2014 WL 4349151 at * 10 (D.S.C. Aug. 29, 2014) [Noting that decisions not to authorize elective surgeries for pretrial detainees do not rise to the level of a constitutional violation, that plaintiff bears the burden of presenting "sufficient evidence to show decision not to approve [requested surgery] was . . . without any medical rationale", and that detention facility need provide no more than reasonable

- 21 -

level of care] (citing Martin v. Bowman, Nos. 94-6246, 94-6256, 1995 WL 82444 at * 4 (4th Cir. Feb. 24, 1995); see also Vanzant v. Carolina Center for Occupational Health, No. 14-3725, at * 15 (D.S.C. Aug. 25, 2015). Plaintiff has simply failed to provide any such evidence (or, indeed, much evidence at all with respect to this claim).[10]

Even if the medical evidence provided could be construed as giving rise to a genuine issue of fact that a medical professional was negligent in diagnosing and treating Plaintiff's medical complaints (which was not even Coe's responsibility), that would not be sufficient to maintain this §1983 lawsuit. See Patton, 274 F.3d 845-846 [Granting summary judgment where the evidence was insufficient to give rise to a genuine issue of fact that the defendants "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional."]; see also Kollyns v. Chavez, No. 05-3022, 2006 WL 2459484, at * 2 (D.S.C. Aug. 23, 2006) ["To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints"]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]. The actual medical evidence provided to the Court (including Plaintiff's own evidence) reflects that Plaintiff was provided medications for his migraine complaints and that he was seen and provided care and instructions for his complaints about his teeth. He is simply dissatisfied with the medical care and

---

[10]The Court is constrained to note that much of Plaintiff's "evidence" consists of grievances he filed complaining about his medical care. However, grievances are not themselves medical evidence. Cf. Pearson v. Green, No. 11-105, 2012 WL 985295 at * 7 (D.Mont. Feb. 9, 2012) [Grievances "submitted at detention center are not evidence of what [petitioner] complained of, much less of the medical significance of his complaints."] [habeas case].

treatment he received, including the opinions about what care and treatment he needed. More importantly, Plaintiff has presented no evidence to show that Coe refused to follow, or deviated from, any medical care instructions provided to him by a medical professional. Miltier, 896 F.2d at 854 [officials entitled to rely on expertise of medical personnel].

In sum, Plaintiff's own unsubstantiated and lay opinion that the decision that his tooth was a non-emergent medical problem was somehow improper, or that his headaches should have been treated solely with Imitrex which Coe did not want to provide him,[11] without any competent or probative supporting medical evidence substantiating these conclusory claims or showing any decisions made by Coe to have been improper, is insufficient to avoid summary judgment. Shakka, 71 F.3d at 167 [officials entitled to rely on judgment of medical personnel]; Youngberg, 457 U.S. at 322-323 ["Courts must show deference to judgment exercised by a qualified professional]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; see also Drakeford, 2010 WL 4884897, at * 3 [Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"]. Therefore, Coe is entitled to summary judgment with respect to these two claims.

## IV.

Giving Plaintiff's Complaint the liberal construction to which he is entitled, he may

---

[11]Moreover, and contrary to Plaintiff's allegation that he was not provided with Imitrex because Coe thought it was too expensive, Plaintiff's medical records show that he *was* provided with Imitrex, along with other migraine medications.

also be asserting a claim against Coe that Coe did not properly respond to or accept his grievances wherein Plaintiff routinely complained about the medical care he was receiving (among other complaints). However, to the extent Plaintiff has intended to assert a claim that the Defendant Coe (or anyone else) mishandled or improperly handled his grievances concerning these complaints, that is not a claim cognizable in this Court in a § 1983 action, as there is no constitutional right of access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005).

Therefore, a defendant's failure to follow a jail grievance procedure (even if that had been shown in this case) does not give rise to a § 1983 claim. Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; Moore v. Sergent, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); cf. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure]. Hence, any such claim (if being asserted) is without merit.



## V.

If the Court accepts the recommendations set forth herein with respect to Plaintiff's claims against the Defendants Byrd and Coe, the question then becomes what to do with the remaining Defendant Diann Wilkes, who has never made an appearance in the case. Plaintiff has made no attempt to have a default entered against this Defendant under Rule 55(a), Fed.R.Civ.P, but even if he had, there would appear to be ample grounds for Wilkes to contest any such finding, as it is apparent the Marshal only attempted service on her by mail, with the service receipt having been signed by an unidentified individual, not Wilkes. While service by the Marshal by mail is often appropriate, and is indeed how the Marshal usually affects service, there has been no waiver of personal service in this case. See Rule 4(c)(3) and (d), Fed.R.Civ.P. Even so, since it is the Marshal who is responsible for service of process in this case, dismissal of Plaintiff's claims against this Defendant pursuant to Rule 4(m) (providing for dismissal of a Defendant who is not served within ninety (90) days after the Complaint is filed) also would not be appropriate. Rather, in the event this case is not otherwise dismissed in toto, a new order should be entered directing the Marshal to *personally* serve the Defendant Wilkes at the location shown on the summons. See Rule 4(e), Fed.R.Civ.P.; Rule 4(d), S.C.R.Civ.P.[12]

However, even though the pending motion for summary judgment was not filed on

---

[12]The undersigned is constrained to note that Dianne Wilkes (correct spelling) has been a Defendant in some of Plaintiff's previous cases. Service was apparently affected on Wilkes at the jail in those other cases, and she was represented in those cases by the same counsel who represented the jail Defendants (usually Waddell or Coe or both) in those other cases. It is unclear why that did not happen here, especially since defense counsel did initially file a responsive pleading on behalf of Wilkes, but that does not change the fact that Wilkes does not appear to have been properly served in this case, and it is unknown whether she even has knowledge of the pendency of this particular lawsuit.



behalf of Wilkes, the medical records and evidence that have been filed by both Plaintiff and the Defendants are nonetheless relevant to a consideration of all of Plaintiff's medical claims, as they encompass the same medical complaints asserted against Wilkes (i.e., Plaintiff's medical claims concerning his migraine headaches and his request for a tooth extraction). Further, one of Plaintiff's previous lawsuits, Tyler v. Coe, Civil Action No. 9:16-2711, also touched on some of these same complaints, and the Defendant Wilkes (in that case) submitted not just an affidavit in support of summary judgment, but also 161 pages of Plaintiff's medical/inmate records, some of which touch on the same medical claims Plaintiff is making in this case. Aloe Creme Laboratories, Inc., 425 F.2d at 1296 [a federal court may take judicial notice of the contents of its own records].[13] The standard for Plaintiff to be able to proceed with his claims against Wilkes is also the same standard as has been previously set forth and discussed herein, supra; i.e., liability may be imposed only if Plaintiff has evidence to show that "the decision by the professional [Wilkes] is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment". Youngberg, 457 U.S. at 323. "In determining whether the State has met its obligations . . . decisions made by the appropriate professional [here, Wilkes] are entitled to a presumption of correctness. Such a presumption is necessary to enable institutions of this type . . . to continue to function". Id, at 324.

Therefore, to proceed with his claim against Wilkes, Plaintiff needs to have submitted evidence sufficient to create a genuine issue of fact as to whether Wilkes (or indeed any other

---

[13] Notably, those records also only contained the same two medical notations regarding Plaintiff's tooth that are in the current case. See Court Docket No. 19.4, pp. 51, 118 in Civil Action No. 9:16-2711-MGL.



medical professional) failed to exercise the level of professional judgment required by <u>Youngberg</u> with respect to his complaints. <u>See Patten</u>, 274 F.3d at 838 [Denial of medical care claim brought by an involuntarily committed patient "must be measured against the professional judgment standard articulated by the [Supreme] Court in <u>Youngberg</u>"]; <u>see also Kollyns</u>, 2006 WL 2459484, at * 2 ["To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints"]. However, as has been previously discussed, while Plaintiff is obviously dissatisfied with the medical care and treatment he has received, he has failed to present any actual medical evidence (in this case, as he also failed to do in C. A. No. 9:16-2711 [14])to show that any of the medical treatment or advice given to him represented "a substantial departure from accepted professional judgment, practice or standard". <u>Youngberg</u>, 457 U.S. at 323; <u>see also Savidge</u>, 836 F.2d at 907-908 [Civilly committed patients' right is to "minimally adequate . . . medical care"]; <u>Patton</u>, 274 F.3d 845-846 [Granting summary judgment where the evidence was insufficient to give rise to a genuine issue of fact that the defendants "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional."].

Reviewing the medical evidence that has been submitted in this Court by both Plaintiff and the Defendants in the light most favorable to the Plaintiff, the undersigned does not find that there is any evidence sufficient to create a genuine issue of fact that Wilkes at any time ever acted in an arbitrary manner with respect to Plaintiff's complaints of migraine headaches or with respect to his request to have a tooth extraction scheduled, that any medical decisions she made were

---

[14]Summary judgment against the Plaintiff was granted in that case. <u>See Tyler v. Coe</u>, C. A. No. 9:1602711, Court Docket No. 32.



a substantial departure from accepted professional judgment, practice or standards, or to show that Wilkes at any time knew of and disregarded an excessive risk to Plaintiff's health or safety. Levy, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; A.P. ex rel. Bazerman v. Feaver, 2008 WL 3870697 at *12 ["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; Kollyns, 2006 WL 2459484, at * 2 ["To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints"]. As previously explained, Plaintiff's own self serving and lay opinion that he was not receiving proper treatment for his medical complaints, without any supporting or corroborating medical evidence, is simply not sufficient to allow him to continue prosecution of this § 1983 lawsuit. Malik, 2012 WL 3834850, at * 5, aff'd. 507 Fed. Appx. 294 (4th Cir. 2013) [Finding that a self serving affidavit from the Plaintiff was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of Plaintiff's self serving claims]; Scheckells, 423 F.Supp. 2d at 348 ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."].

Therefore, rather than attempting to re-serve Wilkes at this late date, and based on the evidence before this Court, it is recommended that the remaining claims asserted against the Defendant Wilkes also be dismissed. Youngberg, 457 U.S. at 322-323 ["Courts must show deference to judgment exercised by a qualified professional]; Mays v. Springborn, 575 F.3d 643, 648 (7th Cir. 2009)[prisoner must have *evidence* to show the Defendant was deliberately indifferent to an

- 28 -

objectively serious risk of harm and that the Defendant knew about it and could have prevented it but did not].

### Conclusion

Based on the foregoing, it is recommended that the motion for summary judgment filed by the Defendants Byrd and Coe be **granted**, and that Plaintiff's claims against these two defendants be **dismissed**. It is further recommended that with respect to the remaining Defendant Wilkes (who has never made an appearance in this case), that the claims against this Defendant also be dismissed based on the evidence provided, and that this case be **dismissed** in toto.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

May 24, 2017
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

